**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT WILHELM, | ) |
| Plaintiff, | ) Case No. |
| vs. | ) |
| METROMILE, INC., DAN PRESTON, COLIN BRYANT, JOHN BUTLER, SANDRA CLARKE, RYAN GRAVES, and VIKAS SINGHAL, | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Robert Wilhelm ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Metromile, Inc. ("Metromile" or the "Company") and the members of Metromile's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Lemonade, Inc. ("Lemonade") through Lemonade's subsidiaries Citrus Merger Sub A, Inc. ("Acquisition Sub I") and Citrus Merger Sub B, LLC ("Acquisition Sub II") (the "Proposed Transaction").

2. On November 8, 2021, Metromile and Lemonade announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Metromile stockholder will receive 0.05263 shares of Lemonade common stock for each Metromile share they own.

3. On December 29, 2021, Metromile filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's and Lemonade's financial projections and the financial analyses performed by the Company's financial advisor Allen & Company LLC ("Allen"); (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Metromile.

9. Defendant Metromile is a Delaware corporation, with its principal executive offices located at 425 Market Street #700, San Francisco, California 94105. Metromile's common stock trades on the Nasdaq Capital Market under the ticker symbol "MILE."

10. Defendant Dan Preston ("Preston") has served as Chief Executive Officer of the Company since 2014, and as a director of the Company at all relevant times.

11. Defendant Colin Bryant has served as a director of the Company at all relevant times.

12. Defendant John Butler has served as Chairman of the Board since August 31, 2021, and as a director of the Company since August 4, 2021.

13. Defendant Sandra Clarke has served as a director of the Company since August 31, 2021.

14. Defendant Ryan Graves has served as a director of the Company at all relevant times.

15. Defendant Vikas Singhal has served as a director of the Company at all relevant times.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

17. Relevant non-party Lemonade is a Delaware corporation, with its principal executive offices located at 5 Crosby Street, 3rd Floor, New York, New York 10013. Lemonade offers renters, homeowners, pet, car, and life insurance. Lemonade is currently available in the United States, Germany, the Netherlands, and France, and continues to expand globally. Lemonade's common stock trades on the New York Stock Exchange under the ticker symbol "LMND."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

18. Metromile provides pay-per-mile car insurance services in the United States and internationally. Metromile offers its insurance customers real-time, personalized auto insurance policies priced and billed by the mile, with rates based on precisely how and how much they actually drive instead of the industry's reliance on approximations. Through Metromile's digitally native offering, built around the needs of the modern driver, the Company believes its per-mile insurance policies save its customers, on average, 47% over what they were paying their previous auto insurer. In addition, through Metromile Enterprise, Metromile licenses its technology platform to insurance companies around the world. Metromile's cloud-based software as a service enables carriers to operate with greater efficiency, automate claims to expedite resolution, reduce losses associated with fraud, and unlock the productivity of employees.

19.     On November 15, 2021, Metromile announced its third quarter 2021 financial results. Total revenue was $30.0 million, compared to $8.0 million in the third quarter 2020. For the nine months ended September 30, 2021, total revenue was $75.4 million, up from $24.4 million in the same period of the prior year. Net loss per share was $0.21, as compared to net loss per share of $1.20 in the third quarter of 2020. For the nine months ended September 30, 2021, net loss per share was $1.56, improved from net loss per share of $4.10 in the same period of 2020.

20.     On November 8, 2021, Metromile and Lemonade issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> New York (November 8, 2021)—Lemonade (NYSE: LMND) the insurance company powered by AI and social good, and Metromile (NASDAQ: MILE, MILEW), the data science company focused on auto insurance, have entered into a definitive agreement pursuant to which Lemonade will acquire Metromile in an all-stock transaction that implies a fully diluted equity value of approximately $500 million, or just over $200 million net of cash. Under the terms of the transaction, Metromile shareholders will receive Lemonade common shares at a ratio of 19:1.
>
> While Lemonade has been at the forefront of using big data and AI in home and pet insurance, Metromile has been trailblazing a parallel path for car insurance. Metromile's car-mounted precision sensors took over 400 million road trips in recent years, covering billions of miles and sending real-time streams to the Metromile cloud. These were cross referenced with actual claims data, yielding precise predictions for losses per mile driven. These algorithms hold the promise of propelling Lemonade Car from a newcomer in the car insurance space to its vanguard.
>
> "We launched Lemonade Car last week, and we think you'll love how it looks and handles. Pop the hood and you'll see that it's powered by telematics and architected to learn from the data it generates, with precision pricing as its ultimate destination," said Daniel Schreiber, Lemonade CEO and cofounder. "That's where Metromile comes in. They have been down this road billions of times, and their proprietary data and machine learning algorithms can vault us over the most time and cost intensive parts of the journey. In a vast and competitive market like auto insurance, today's deal is a huge unlock of value for our customers and shareholders."
>
> Metromile enjoys 49 state licenses, over $100 million of seasoned in-force premium (IFP), over $250 million of cash on the balance sheet, and a team unmatched for their expertise in harnessing big data and AI for car insurance.

> "We've long admired Lemonade for its beautiful products, world-class customer experience, unprecedented growth, and socially-impactful business model," said Dan Preston, CEO of Metromile. "The data science-driven technology platform we built created fairer and more individualized car insurance for consumers in an industry marred by vast inequities. Joining forces with Lemonade Car will create the most customer-centric, fair, and affordable car insurance, and is a great outcome for Metromile shareholders, who will benefit as shareholders of the combined company. It also means that now, homeowners, renters, and drivers alike can have all of their insurance needs with a single company that truly has their best interests at heart."
>
> The transaction is expected to close during Q2 2022, once all regulatory approvals have been secured. The transaction requires the approval of Metromile stockholders, and is subject to other customary closing conditions.

**The Proxy Misleads Metromile Stockholders by Omitting Material Information**

21. On December 29, 2021, defendants caused to be filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Metromile's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) the Company's and Lemonade's financial projections and the financial analyses performed by the Company's financial advisor, Allen; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's and Lemonade's Financial Projections and Allen's Financial Analyses*

22. The Proxy omits material information regarding the Company's and Lemonade's financial projections.

23. For example, the Proxy fails to disclose the line items underlying the Company's and Lemonade's respective unlevered free cash flows over the projection period.

24. The Proxy also fails to disclose Metromile's unlevered free cash flows for the July Metromile forecasts.

25. The Proxy also fails to disclose material information regarding Allen's financial analyses.

26. The Proxy describes Allen's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Allen's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Metromile's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Allen's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

27. With respect to Allen's *Selected Public Companies Analyses*, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the comparable companies observed by Allen; and (ii) Metromile's calendar year 2022 estimated gross premium.

28. With respect to Allen's *Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the transactions observed by Allen.

29. With respect to Allen's *Discounted Cash Flow Analysis* of Metromile, the Proxy fails to disclose: (i) the value of the potential tax benefit of Metromile's net operating losses; (ii) Metromile's fiscal year 2031 estimated net operating profit after tax for its insurance operations and fiscal year 2031 estimated revenue for its enterprise business operations, used to calculate the implied terminal values for the Company; (iii) the implied terminal values for Metromile; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%.

30. With respect to Allen's *Discounted Cash Flow Analysis* of Lemonade, the Proxy fails to disclose: (i) the value of the potential tax benefit of Lemonade's net operating losses; (ii) Lemonade's fiscal year 2031 estimated net operating profit after tax, used to calculate the implied

terminal values for Lemonade; (iii) the implied terminal values for Lemonade; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%.

31. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Certain Financial Forecasts Utilized by Metromile in Connection with the Mergers" and "Opinion of Metromile's Financial Advisor."

*Material Omissions Concerning the Background of the Proposed Transaction*

32. The Proxy fails to disclose material information regarding the background of the Proposed Transaction.

33. For example, the Proxy sets forth that on August 23, 2021, Metromile executed a non-disclosure agreement ("NDA") with a party referred to as "Party B." The Proxy, however, fails to disclose whether the NDA includes a "don't-ask, don't-waive" standstill provision that is presently precluding Party B from submitting a topping bid for the Company.

34. Any reasonable Metromile stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

35. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Background of the Mergers."

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

36. The Proxy fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

37. The Proxy sets forth that defendant Preston has entered into an offer letter with Lemonade. *Id.* at 198. The Proxy, however, fails to disclose the position defendant Preston will assume with Lemonade upon closing of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Lemonade and Metromile's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy further fails to disclose whether any of Lemonade's proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

38. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Mergers" and "Interests of the Company's Directors and Executive Officers in the Merger."

40. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

41. Plaintiff repeats all previous allegations as if set forth in full.

42. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

43. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Lemonade's financial projections, Allen's financial analyses, the background of the Proposed Transaction, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

45. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

46. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

47. Plaintiff repeats all previous allegations as if set forth in full.

48. The Individual Defendants acted as controlling persons of Metromile within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Metromile, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Metromile's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Metromile, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  January 14, 2021

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

**LONG LAW, LLC**

By  */s/ Brian D. Long*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*